J-A27042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID VALASQUEZ | : | |
| | : | No. 3470 EDA 2018 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1200451-1997

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:        **FILED JANUARY 08, 2020**

David Valasquez (Appellant) appeals from the September 5, 2018 judgment of sentence imposed following a resentencing hearing  pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012)[1] and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016).[2]  We affirm

"On October 26, 1997, [Appellant], then aged seventeen years and two months old, was arrested and charged with murder and related offenses."

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In *Miller*, the United States Supreme Court held that a "mandatory [sentence of] life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments."  567 U.S. at 465 (internal quotation marks omitted).

[2] In *Montgomery*, the United States Supreme Court held that *Miller* applies retroactively to cases on state collateral review.

Trial Court Opinion, 1/23/2019, at 1. These charges stemmed from the September 28, 1997 shooting death of John Anthony Marin (decedent) in a Dunkin Donuts shop in Philadelphia, Pennsylvania. A prior panel of this Court summarized the facts of this matter as follows.

Five to ten minutes before the shooting, decedent had ran into the shop in an excited state, and asked the cashier to call 911. Decedent told the cashier that three males had tried to rob him, and that one of the males was following him into the shop. Appellant came up to the window of the donut shop, and decedent pointed him out. Appellant returned to the shop five minutes later and shot decedent twice inside the store, then hopped on a chrome bicycle and fled across Roosevelt Boulevard, disappearing between the houses before police arrived. Decedent was pronounced dead at the scene by the [m]edical examiner, and police questioned [eyewitness, Norberto] Lopez[,] about the shooting. Lopez described [A]ppellant as wearing a matching green khaki outfit with green jacket and cap, and tan Timberland boots. He also showed police where [A]ppellant fled across the [b]oulevard and between the two houses[.] No weapons were found on decedent, or at the scene. Police did recover a working videotape from one of three surveillance cameras inside the store.

On October 22, 1997, Lopez was re-interviewed by police detectives at the 25th District station, and [he] identified [A]ppellant as the shooter from a police photo array. Lopez also informed detectives that he knew [A]ppellant as "David" because [A]ppellant used to date his next[-]door neighbor. Police secured [] arrest and search warrant[s] for [A]ppellant's residence … and executed the warrants on October 25, 1997. Appellant was arrested in the basement, and the following items were recovered and placed on property receipts: a green shirt, a pair of tan boots, narcotics, two photos of [A]ppellant, and a letter addressed to [A]ppellant[.]

Appellant was taken to [p]olice headquarters where he was placed in an interrogation room until his mother arrived. In the presence of his mother, [A]ppellant was questioned by police detectives Joseph Centeno and Richard Harris. The detectives informed [A]ppellant that [Appellant] was there in response to [the] shooting, and, then proceeded to read him his rights. Both

- 2 -

[A]ppellant and his mother were read his rights, and given a written copy to read and sign, which they initialed. Appellant waived his right to counsel, and stated that he shot decedent because decedent had put a gun in his mouth, robbed him, and taken his money, and a wristwatch. Appellant went to his friend "Mike's" house and got a gun, then went to his friend "George's" house and picked up a bike, then went across the boulevard looking for decedent. After shooting him, [A]ppellant came back across the boulevard, took the gun back to Mike, and then dropped the bike off with George before going home. Police attempted to locate the male [A]ppellant referred to as "Mike," but were unable to find him. The murder weapon was never recovered.

**Commonwealth v. Valasquez**, 959 A.2d 469 (Pa. Super. 2008), *quoting*

Trial Court Opinion, 5/24/2006, at 2-4.

After a jury trial before the Honorable Robert A. Latrone, the jury convicted [Appellant] of first-degree murder, possession with intent to distribute[3] (PWID), and possession of an instrument of crime (PIC), On May 10, 1999, Judge Latrone imposed the then-mandatory sentence of life imprisonment without parole [(LWOP)] for first-degree murder, and concurrent sentences of three to six years of imprisonment for PWID and two and one-half to five years of imprisonment for PIC.

Trial Court Opinion, 1/23/2019, at 1 (unnecessary capitalization and quotation

marks omitted). This Court affirmed Appellant's judgment of sentence on June

13, 2008,[4] and our Supreme Court denied his petition for allowance of appeal.

**Valasquez**, **supra**, *appeal denied*, 959 A.2d 469 (Pa. 2008).

---

[3] When Appellant was arrested, he was in possession of heroin.

[4] It appears the reason for the nearly ten-year delay between the imposition of Appellant's sentence in 1999 and this Court affirming Appellant's judgment of sentence in 2008 was partly due to the ineffective assistance of prior counsel. **See Valasquez**, **supra** ("Appellant filed a timely notice of appeal

On August 2, 2012, Appellant filed a PCRA petition, claiming that his

sentence was unconstitutional under **Miller**.[5]  On February 26, 2016, after the

United States Supreme Court issued its holding in **Montgomery**, Appellant

filed a supplemental PCRA petition.

> On September 5, 2018, th[e trial c]ourt granted [Appellant's PCRA petition] and vacated his May 10, 1999 sentence. Prior to sentencing, the Commonwealth agreed to recommend [a] sentence of [20] years to life imprisonment. After hearing the relevant evidence presented during the resentencing hearing, th[e trial court] rejected the Commonwealth's recommendation and imposed a [25] years to life imprisonment sentence for first-degree murder, and no further penalty on the remaining charges.

> On September 17, 2018, [Appellant filed timely] a post-sentence motion for reconsideration of sentence. On October 31, 2018, [Appellant] filed a supplemental post-sentence motion. On November 1, 2018[,] after a hearing,[6] th[e trial c]ourt denied the

---

on June 8, 1999.  On April 6, 2000, the appeal was dismissed due to counsel's failure to file a brief.  Appellant filed a [petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546,] new counsel was appointed and an amended petition filed seeking reinstatement of Appellant's direct appeal rights due to ineffective assistance.  On May 30, 2002 the petition was granted and Appellant's direct appeal rights reinstated *nunc pro tunc*.  Another appeal was filed but was again dismissed on September 5, 2002 due to counsel's failure to comply with Pa.R.A.P. 3517. Once again, Appellant sought and was granted PCRA relief on June 27, 2003 when the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*[, and Appellant thereafter filed timely a *nunc pro tunc* appeal]").

[5] Appellant's petition was filed within sixty days of the issuance of **Miller**.

[6] The transcript from the hearing on Appellant's motion for reconsideration of sentence is not included in the certified record before us.  "While this Court generally may only consider facts that have been duly certified in the record, [] where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it."  **Commonwealth v. Barnett**, 121

- 4 -

[Appellant's] post-sentence motion. On November 29, 2018, the [Appellant] filed a timely notice of appeal[.[7]]

Trial Court Opinion, 1/23/2019, at 2 (unnecessary capitalization omitted).

Although presented as four distinct issues, Appellant's claims on appeal are all interrelated. In essence, Appellant asserts the trial court abused its discretion and committed errors of law when it resentenced Appellant to 25 years to life imprisonment. Appellant's Brief at 5-6. Specifically, Appellant contends the trial court: (1) committed "legal error when resentencing [Appellant] to a lifetime maximum sentence[;]" (2) placed "too much weight on traditional penological justifications in light of [Appellant's] diminished culpability under the law and demonstrated rehabilitation[;]" (3) penalized Appellant for maintaining his innocence; (4) failed to consider "newly discovered evidence of a diagnosed intellectual disability and its impact on [Appellant's] waiver of Fifth Amendment rights that resulted in a conviction[;]" and (5) failed to consider all of the sentencing factors delineated in **Miller**. **Id.** Appellant's issues implicate both the legality and discretionary aspects of his sentence. We begin with the relevant legal principles.

> A challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*. … [A] claim challenging a

_____

A.3d 534, 546 n.3 (Pa. Super. 2015). Here, the reproduced record contains the transcript and there is no dispute as to its contents. Therefore, we may consider the transcript in our review.

[7] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

sentencing court's legal authority to impose a particular sentence presents a question of sentencing legality.

*Commonwealth v. Batts* (*Batts II*), 163 A.3d 410, 434-35 (Pa. 2017).

Unlike a claim challenging the legality of a sentence,

[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his [or her] sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Here, as discussed *supra*, Appellant timely filed a notice of appeal, and he sought reconsideration of his sentence in a timely-filed post-sentence motion. In addition, he has included a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). **See** Appellant's Brief at 28-30. We now turn to consider whether Appellant has presented a substantial question for our review.[8]

---

[8] The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul,** 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant

In his 2119(f) statement, Appellant asserts the trial court abused its discretion and committed an error of law when the court made "a determination of sentence without adequate, evident consideration of the factors set out in ***Miller***[.]" Appellant's Brief at 30. We find that Appellant has raised a substantial question. ***See Commonwealth v. Seagraves***, 103 A.3d 839, 843 (Pa. Super. 2014) (concluding that discretionary-aspects claim following ***Miller*** resentencing raised a substantial question despite the fact that "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors has been less than a model of clarity and consistency") (citation and some quotation marks omitted).

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

***Commonwealth v. Malovich,*** 903 A.2d 1247, 1252–53 (Pa. Super. 2006) (citations omitted).

---

advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin,*** 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

Furthermore, because this appeal stems from the re-sentencing of a juvenile defendant convicted of first-degree murder pre-***Miller***, we review Appellant's claims cognizant of the following.

> In ***Batts II***, our Supreme Court held, *inter alia*, that a lower court, in resentencing a juvenile offender convicted of first-degree murder prior to ***Miller***, may impose a minimum term-of-years sentence and a maximum sentence of life imprisonment, thus "exposing these defendants to parole eligibility upon the expiration of their minimum sentences." ***Batts II***, 163 A.3d at 439. In determining the minimum term-of-years sentence, the Court mandated that lower courts consult the sentencing requirements codified at 18 Pa.C.S. § 1102.1 for guidance. ***Id.*** at 457. Specifically for a juvenile convicted of first-degree murder pre-***Miller***, the portion of section 1102.1 that a lower court must consider is the guidelines set forth in subsection 1102.1(a).[9] Subsection 1102.1(a)(1) provides, in relevant part, as follows.

---

[9] Moreover, in addition to the traditional considerations a trial court is required to consider when resentencing a juvenile LWOP offender,

> [t]he ***Miller*** Court concluded that sentencing for juveniles must be individualized. This requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:

>> immaturity, impetuosity, and failure to appreciate risks and consequences[;] ... the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] ... the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] ... that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] ... [and] the possibility of rehabilitation

- 8 -

> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S. § 1102.1(a)(1).

***Commonwealth v. White***, 193 A.3d 977, 984 (Pa. Super. 2018).

With the foregoing in mind, and following a review of the certified record and the briefs for the parties, we conclude that the opinion of the Honorable Barbara A. McDermott thoroughly addresses Appellant's issues and arguments and applies the correct law to facts that are supported by the record. We discern no error of law or abuse of discretion. ***See*** Trial Court Opinion, 1/23/2019, at 5 (explaining that, before the re-sentencing hearing, the trial court "reviewed [Appellant's] Memorandum in Support of Resentencing, his Mitigation Report and Reentry Plan, his Housing Performance Record, records furnished by the Department of Corrections, numerous certificates of

---

> ... when the circumstances [*i.e.* (the youthfulness of the offender)] most suggest it.

***Batts II***, 163 A.3d at 431 (citations omitted).

achievement-including his high school diploma-that he has earned, and a multitude of letters sent in support of [Appellant's re-sentencing …,] heard argument from counsel that highlighted several mitigating factors under ***Miller***, and considered testimony from [Appellant's] loved ones and acquaintances"); ***id.*** (explaining that the trial court declined to "consider mitigating factors in a vacuum" and instead balanced the mitigating factors, "including those outlined in ***Miller***, with the facts of the case"); ***id.*** at 6 (stating that while Appellant's diminished capacity was considered, it is "but one factor amongst dozens that th[e trial c]ourt must, and ultimately did, consider in imposing a just sentence"); ***id.*** at 6-7 (asserting that it was "undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor in sentencing at sentencing, provided that it specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs"); ***id.*** at 8-9 (explaining that Appellant's arguments concerning his intellectual disability lacked support and were too "nebulous to warrant relief"); ***id.*** at 9 (finding that Appellant's issues concerning his mental capacity, although framed "as a challenge to th[e trial c]ourt's perceived unwillingness to consider the mental deficiencies at the time he confessed to the crimes," were "nothing more than a thinly veiled attempt to re[-]litigate his conviction"); ***id.*** at 10 (explaining that Appellant's claim that the court relied too heavily on §1102.1(a) "in rendering its sentence … ignores the fact that th[e trial c]ourt significantly deviated from the" statute's

recommended minimum of 35 years' incarceration); *id.* at 11 (explaining that Appellant's challenge to the legality of his sentence, wherein he claims that the imposition of a mandatory life tail is unconstitutional, has already been litigated and this Court has continued to emphasize that lower courts are required to impose a maximum sentence of life imprisonment when resentencing juvenile defendant).

Therefore, we adopt the trial court's opinion of January 23, 2019 as our own and affirm Appellant's judgment of sentence based upon the reasons stated therein.[10, 11]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/8/20

---

[10] Lastly, to the extent Appellant argues the trial court abused its discretion in failing to set forth its reasons for the sentence it imposed on the record, **see** Appellant's Brief at 39, we note that this claim was not presented in Appellant's post-sentence motion. Thus, it is waived. **See Commonwealth v. McAfee**, 849 A.2d 270, 275 (Pa. Super. 2004) ("Issues challenging the discretionary aspects of sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").

[11] The parties shall attach a copy of the trial court's January 23, 2019 opinion to this memorandum in the event of further proceedings.

FILED

2019 JAN 23 PM 2: 06

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-1200451-1997

            : 

            : 

        v. : 

            : 

            : 

DAVID VALASQUEZ, : 

            : 

      Defendant : 

CP-51-CR-1200451-1997 Comm. v. Valasquez, David
Opinion

8217974911

**OPINION**

**McDermott, J.**                                          **January 23, 2019**

**Procedural History**

On October 26, 1997, the Defendant David Valasquez, then aged seventeen years and two months old, was arrested and charged with Murder and related offenses. After a jury trial before the Honorable Robert A. Latrone, the jury convicted the Defendant of First-Degree Murder, Possession With Intent to Distribute ("PWID"), and Possession of an Instrument of Crime ("PIC"). On May 10, 1999, Judge Latrone imposed the then-mandatory sentence of life imprisonment without parole for First-Degree Murder, and concurrent sentences of three to six years of imprisonment for PWID and two and one-half to five years of imprisonment for PIC.

The Defendant appealed and on June 4, 2004, the Superior Court affirmed his judgment of sentence. On February 10, 2009, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal. On June 25, 2012, the Supreme Court of the United States issued its holding in *Miller v. Alabama*, 567 U.S. 460 (2012), which rendered all mandatory life imprisonment without parole sentences for juveniles unconstitutional. On January 27, 2016, the

Supreme Court of the United States issued its holding in *Montgomery v. Louisiana*, --- U.S. ----, 136 S.Ct. 718 (2016), which held that the *Miller* decision applied retroactively.

On September 5, 2018, this Court granted the Defendant post-conviction relief and vacated his May 10, 1999 sentence. Prior to sentencing, the Commonwealth agreed to recommend sentence of twenty years to life imprisonment. After hearing the relevant evidence presented during the resentencing hearing, this Court rejected the Commonwealth's recommendation and imposed a twenty-five years to life imprisonment sentence for First-Degree Murder, and no further penalty on the remaining charges.

On September 17, 2018, the Defendant filed a post-sentence motion for reconsideration of sentence. On October 31, 2018, the Defendant filed a supplemental post-sentence motion. On November 1, 2018, after a hearing, this Court denied the Defendant's post-sentence motion. On November 29, 2018, the Defendant filed a timely Notice of Appeal with the Superior Court. On November 30, 2018, this Court ordered the Defendant to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On December 21, 2018, the Defendant filed a timely statement.

## Facts

During the September 5, 2018 resentencing hearing, the Commonwealth summarized the facts of the case as follows:

> [O]n September 28th of 1997 at about 4:30 in the afternoon the victim in this case, 28-year-old John Anthony Marin, was in the area of [ ] 5001 Rising Sun Avenue near Dunkin' Donuts. The victim came into that Dunkin' Donuts and was described by the witnesses as bleeding from the lips. Mr. Marin approached the cashier and stated that three people had just tried to rob him.
> As the cashier was calling police, witnesses stated that the victim began to yell to the cashier that the male who had tried to rob him was entering the store. That male, [the Defendant David Valasquez],

2

approached the victim and fired two shots. Multiple witnesses were shown photo arrays and identified the shooter as [the Defendant].

[The Defendant] exited the store and rode away on a GT bike. Upon his apprehension by police, [the Defendant] was found to be in possession of an amount of heroin that was determined to rise to the level of PWID. He was warned of his rights and in the presence of his mother gave a statement to homicide detectives in which he admitted to the shooting.

His version of what the shooting was about varied from what [the decedent] had been saying in the Dunkin' Donuts, but nevertheless he admitted to the shooting.

[The decedent] died of two gunshot wounds, one to the left back and one to the left thigh.

N.T. 9/5/2018 at 13–14.

## Discussion

The Defendant raises nine challenges to the discretionary aspects of his sentence, alleging that this Court abused its discretion by: (1) failing to sufficiently consider the resentencing factors outlined in *Miller*; (2) placing too much weight on traditional penological concerns during resentencing; (3) placing too much weight on the Defendant's failure to accept responsibility for the crime; (4) failing to adequately consider the Defendant's rehabilitative needs; (5) failing to consider the Defendant's mental disability; (6) failing to consider the Defendant's inability to waive his Fifth Amendment rights; (7) assuming that the Defendant had a basic understanding of his *Miranda* rights; (8) considering victim impact testimony concerning statements made by the Defendant's mother; and, (9) relying too heavily on 18 Pa.C.S. § 1102.1(a) for guidance. The Defendant further alleges that (10) this Court improperly imposed an unconstitutional maximum penalty of life imprisonment.

When imposing a sentence, a trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense [. . .] and the rehabilitative needs of the defendant." 42 Pa.C.S. §

3

9721(b). It is well-settled that sentencing is a matter vested in the sound discretion of the trial court, and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (*citing Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007)). An abuse of discretion is not merely an error in judgment; a defendant must establish that the sentencing court misapplied the law or exercised its judgment for reasons of partiality, prejudice, bias, or ill-will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003).

A defendant challenging the discretionary aspects of his sentence must establish, *inter alia,* that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Eisenberg*, 98 A.3d 1268 1277 (Pa. 2014); 42 Pa.C.S. § 9781(b). A substantial question exists when an appellant raises "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015). An issue concerning the legality of sentence is reviewable and cannot be waived. *Commonwealth v. Olson*, 179 A.3d 1134, 1137 (Pa. Super. 2018) (*citing Commonwealth v. Jones*, 932 A.2d 179, 182 (Pa. Super. 2007)

In imposing a sentence, a court shall follow the general principle that the sentence imposed calls for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). The Supreme Court of Pennsylvania has determined that, when sentencing a juvenile facing a potential life without parole sentence, *Miller* requires the sentencing court to consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of the defendant's participation

in the crime, his family, home, and neighborhood environment, his maturity and development, past exposure to violence, drug and alcohol history, ability to deal with the police, his mental health history, his potential for rehabilitation, and the extent that familial or peer pressure may have affected him. *Commonwealth v. Batts*, 163 A.3d 410, 421, n. 5 (Pa. 2017) (*"Batts II"*) (*citing Commonwealth v. Batts*, 66 A.3d 286, 297 (Pa. 2013) (*"Batts I"*).

The Defendant alleges that this Court gave scant attention to the *Miller* factors when imposing sentence, and instead focused too heavily on the nature of the homicide and other traditional penological concerns. The Defendant is mistaken. Prior to the resentencing hearing, this Court reviewed the Defendant's Memorandum in Support of Resentencing, his Mitigation Report and Reentry Plan, his Housing Performance Record, records furnished by the Department of Corrections, numerous certificates of achievement—including his high school diploma—that he has earned, and a multitude of letters sent in support of his resentencing. Each of these submissions address the *Miller* factors, which this Court took into consideration during sentencing. This Court heard argument from counsel that highlighted several mitigating factors under *Miller*, and considered testimony from the Defendant's loved ones and acquaintances, including the Defendant's wife Tamara Cruz, Correctional Officers Alex Pierce, Captain Randy Irwin, and Lieutenant Casey Cleveland, teacher Arthur Hilinski, and social worker Tammy Joe Rodgers, each of whom testified to the Defendant's good character.

This Court is not obligated to consider mitigating factors in a vacuum, but must instead balance these factors, including those outlined in *Miller*, with the facts of the case. The Defendant shot the decedent during a robbery. After the decedent attempted to escape, the Defendant tracked him to an open Dunkin' Donuts where, in plain view of multiple witnesses, executed the decedent with two gunshot wounds to his back and thigh. The Defendant was convicted of First-Degree

5

Murder, and sentenced to life without parole. By virtue of the Supreme Court's holding in *Miller*, the Defendant was granted an opportunity to have his sentence reconsidered. This Court ultimately imposed a twenty-five year to life sentence. The fact that the Defendant did not receive his preferred sentence of twenty-years to life does not implicate an abuse of discretion on the part of this Court.

The Defendant similarly argues that this placed too much weight on penological concerns when the chief focus of the hearing should have been his own diminished capacity. As stated above, the Defendant's diminished capacity as associated with his youth is but one factor amongst dozens that this Court must, and ultimately did, consider before imposing a just sentence. The Defendant, while recognizing the wide latitude of this Court's discretion, seeks to limit the scope of that discretion and conform it to his own individual whims. Such an interpretation of this Court's discretion greatly diminishes the interests of justice. Such interests demand that the Court consider every factor at its disposal, not just those cherry picked by an individual, convicted defendant, in order to best protect the community.

The Defendant further alleges that this Court unlawfully punished him by placing too much weight on his failure to accept responsibility during the resentencing hearing. Prior to and during the resentencing hearing, the Defendant maintained his innocence of the crime. It is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor in sentencing at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs. *Commonwealth v. Grays*, 167 A.3d 793, 817 (Pa. Super. 2017) (*citing Commonwealth v. Bowen*, 975 A.2d 1120, 1125 (Pa. Super. 2009)).

6

Here, the Defendant maintains his innocence, as is his right. However, this Court is obligated to consider the facts of the case and other evidence when rendering its decision. After hearing evidence from multiple eyewitnesses that the Defendant himself hunted down and executed the decedent after he escaped a robbery, it convicted him of First-Degree Murder. While the Defendant's youth and incapacity at the time of the shooting diminishes his culpability for the crime, it does not absolve him of it. The cold-blooded and grisly nature of the Defendant's act demonstrates a callousness not present in most teenagers. This Court notes that the homicide in question did not result from a split-second, emotional decision that could be solely attributable to youth. Instead, the facts proven at trial demonstrated that the Defendant stalked the decedent after attempting to rob him, followed him into a public area filled with innocent bystanders, and executed him with two shots. The Defendant's actions not only resulted in the decedent's death, but risked the deaths of other innocent people.

Though the Defendant expressed sorrow for the decedent's family, his alleged sympathy is not synonymous with remorse. Though this Court could never know for certain whether the Defendant committed the crime in question, if the Defendant was in fact responsible, as a jury of his peers deemed him to be, his refusal to accept responsibility and show remorse reflects the same callousness that was present within him as a teenager. Clearly, the Defendant's lack of remorse, coupled with the Court's responsibility to protect the public, the gravity of the offense, and the impact on the lives of the surviving victims, justify the current sentence.

The Defendant also avers that this Court failed to place sufficient weight on his rehabilitative needs and the protection of the public. Essentially, the Defendant claims that he has no rehabilitative needs and poses no danger to the public. While this Court disagrees with this point, even if the Defendant was fully rehabilitated and did present no danger to the public, this

7

Court would still be well within its discretion to impose the instant sentence. As stated above, the Defendant's rehabilitative needs and the responsibility to protect the public are but two factors a court must consider when imposing sentence. This Court is also obligated to consider the gravity of the Defendant's offense. Here, the Defendant shot an individual twice, in broad daylight, in view of multiple witnesses, and to this day has failed to show remorse for his crime. Again, the Defendant seeks an *à la carte* selection of factors to guide this Court's determination, but requests that this Court's consideration of the gravity of the offense be removed from the menu. The Defendant's interpretation of sentencing law, that few factors be given prominence while wholly ignoring others, is unsupported in Commonwealth case law and does not give rise to an argument warranting relief.

The Defendant argues that this Court failed to consider his intellectual disability when imposing sentence. But for his intellectual disability, the Defendant contends, he may have exercised his right to remain silent, have been willing to accept a ten to twenty year plea deal for the instant case, or, perplexingly, been charged and convicted of a lesser offense. The Defendant's argument that, even though he now claims his innocence, he would have accepted a guilty plea offer at the time of the shooting is too nebulous to warrant relief. Similarly, his argument concerning being charged with a lesser offense fails, as he declines to present a basis to support his argument.

This Court reviewed the Defendant's mitigation report, which revealed that the Defendant had an above average IQ of 106 when the test was administered shortly after the murder, had a sixth grade reading level, eighth grade spelling level, and fifth grade math level at the time of his arrest. *See* Defense Exhibit D-1. Unlike other juvenile defendants who were held back in their studies, the Defendant was enrolled the 11th grade at the time of the murder, and he would go on

to earn his high school diploma while incarcerated in 2001, a quick achievement time based on this Court's experience. *Id.* Based on this Court's analysis, while the Defendant was diagnosed with a learning disability at the time he was elementary school age, his slightly above average intelligence, reading, and spelling levels indicate that he suffered no major intellectual disability beyond that associated with youth and immaturity, as defined in *Miller.* The Defendant fails to state a cause for relief.

The Defendant's next two claims concern his mental capacity to understand and waive his Fifth Amendment right protecting against self-incrimination. While the Defendant attempts to frame this argument as a challenge to this Court's perceived unwillingness to consider the mental deficiencies associated with his youth at the time he confessed to the crime, these claims are nothing more than a thinly veiled attempt to relitigate his conviction. This Court is not charged with reconsidering the Defendant's guilt or innocence. A resentencing hearing is not the proper forum to challenge the sufficiency of the evidence or the reliability of his confession. The Defendant previously challenged the voluntariness of his confession prior to trial, and Judge Latrone found his confession to be credible. Any continued challenge made in this forum constitutes a waste of judicial resources unbecoming of an inmate who has demonstrated remorse and an ability to rehabilitate himself after committing such a grave offense. No further discussion is warranted.

Although his position is unclear, the Defendant next appears to argue that this Court was improperly swayed by victim impact testimony from the decedent's family that, after the trial, the Defendant's mother laughed at the family and told them "At least I get to see my son and all you do get to do is throw dirt and flowers on your son." N.T. 9/5/2018 at 20. As discussed thoroughly above, this Court supplemented its consideration of the *Miller* factors with traditional penological

9

concerns such as the protection of the public, the gravity of the offense, and the rehabilitative needs of the public. Any interaction the Defendant's mother may have had with the decedent's family was ancillary at best and granted little weight to this Court's consideration.

The Defendant further claims that this Court relied too heavily on 18 Pa.C.S. § 1102.1(a) in making its determination. For a juvenile convicted after June 24, 2012 of first degree murder, subsection (a)(1) provides that:

> A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years of age.

18 Pa.C.S. §1102.1(a)(1). In *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017), the Supreme Court of Pennsylvania declared that, to promote uniformity in sentencing for pre- and post-*Miller* cases, when determining the appropriate minimum term of sentence, sentencing courts should be guided by the minimum sentences contained in 1102.1(a), or thirty-five years to life imprisonment penalties for First-Degree Murder convictions of juvenile defendants between the ages of fifteen and eighteen. *Batts*, 163 A.3d at 458.

Here, the Defendant claims that this Court relied too heavily on the Supreme Court's guidance when it rejected the Commonwealth's resentencing recommendation of twenty years to life imprisonment. While it is true that this Court considered § 1102.1(a) in rendering its sentence, the Defendant ignores the fact that this Court significantly deviated from the Supreme Court's recommendation by imposing a minimum sentence that was ten years less than the statutorily recommended penalty. Ultimately, the Defendant received a considerable benefit from this Court's deviation: a nearly thirty percent decrease from the statutorily recommended sentence. and had this Court strictly followed the Supreme Court's guidance in this matter, it would have

10

imposed the suggested thirty-five year to life sentence. The Defendant's argument has no basis in fact and should be rejected.

Finally, the Defendant presents a challenge to legality of his sentence, arguing that this Court improperly imposed an unconstitutional maximum sentence of life imprisonment. This issue has been thoroughly resolved in *Batts*, *infra*. In *Batts*, the Supreme Court of Pennsylvania found that for juveniles convicted prior to *Miller*, a sentencing court may resentence affected defendants to a minimum term-of-years sentence and must impose a mandatory maximum sentence of life in prison, exposing defendants to parole eligibility upon the expiration of their minimum sentences. *Id.*; *see also* 61 Pa.C.S. § 6137(a)(3). In *Commonwealth v. Seskey*, 170 A.3d 1105 (Pa. Super. 2017), the Superior Court reemphasized that a trial court must impose the mandatory maximum sentence of life imprisonment when it vacated the appellant's thirteen to twenty-six year sentence for First-Degree Murder, and remanded the matter for resentencing. *See also Commonwealth v. Olds*, --- A.3d ----, 2018 WL 3233726 (Pa. Super. 2018) (mandatory maximum term of life imprisonment does not violate the Eighth Amendment's ban on cruel and unusual punishment).

This Court imposed a sentence of twenty-five years to life imprisonment. Under the recent holdings in the Superior and Supreme Court, this Court must impose a mandatory life imprisonment maximum sentence tail. The Petitioner's claim that this Court's imposition of a maximum term of life imprisonment and lifetime parole term is unconstitutional is without merit. Nevertheless, even if this Court was not required to impose a maximum life sentence, it maintains that a maximum life sentence is appropriate in this case based on the seriousness of the offense and the threat to the public's safety posed by the Petitioner. This Court would have used its

11

discretion to impose a maximum life sentence had this Court not been obligated to do so by statute. No further discussion is warranted.

For the foregoing reasons, the judgment of this Court should be affirmed.

BY THE COURT,

_Barbara McDermott_
Barbara A. McDermott, J

12

*Commonwealth v. David Valasquez,* **CP-51-CR-1200451-1997**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Lawrence Goode, Esq.

**Type of Service:**          **DA's Assigned Courthouse Box**

Michael C. Falk, Esq.
Samantha L. Rocchino, Esq.
Reed Smith LLP
Three Logan Square
1717 Arch Street
Suite 3100
Philadelphia, PA 19103

**Type of Service:**          **First Class Mail**

David Valasquez
DY 0049
SCI Albion
10745 Route 18
Albion, PA 16475-0001

**Type of Service:**          **Certified Mail**

Dated: **January 23, 2019**

**Joseph R. Duffy, Esq.**
**Judicial Clerk to the**
**Honorable Barbara A. McDermott**